IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| RADC/ CADC VENTURE 2010-2, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 1:10-CV-3395-RWS |
| | : | |
| HUNT VALLEY PROPERTIES, LLC, CHARLES B. MERRILL, III, LEE OLIVER GASKINS, III, AND ERIC FICHTNER, | : | |
| | : | |
| | : | |
| | : | |
| Defendants. | : | |

## ORDER

This case comes before the Court on Plaintiff RADC/CADC Venture 2010-2, LLC's ("Plaintiff" or "RADC/CADC") Motion for Summary Judgment [23]. After reviewing the record, the Court enters the following Order.

## Background

This case is a suit on a promissory note executed by Defendant Hunt Valley Properties, LLC ("Hunt Valley") and personal guaranty agreements executed by each of the individual Defendants, Charles B. Merrill, III, Lee

Oliver Gaskins, and Eric Fitchner (collectively the "Guarantors").[1]  The

evidence in the record shows that on December 22, 2006, Defendant Hunt

Valley executed a $500,000.00 promissory note (the "Note") in favor of

Rockbridge Commercial Bank ("Rockbridge"), Plaintiff's predecessor-in-

interest,[2] memorializing a loan in the same amount.[3]  (Aff. of Perry Hariri

---

[1] Defendants purport to dispute the premise of this suit, i.e., that Hunt Valley executed the promissory note at issue and that the individual Defendants executed the subject guaranty agreements.  (See generally Defs.' Br. in Opp'n to Pl.'s Mot. for Summ. J. ("Defs.' Opp'n Br."), Dkt. [24]; Defs.' Resp. to Pl.'s Statement of Material Facts ("Defs.' Resp. to Pl.'s SMF"), Dkt. [24-1].)  To this end, Defendants contend that Plaintiff has failed to produce admissible evidence authenticating the alleged promissory note and personal guaranty agreements.  (Id.)  As discussed in Part II.B.3., infra, however, this contention is without merit and does not create a genuine factual dispute as to whether Defendants executed the documents at issue.  On the contrary, the Court finds sufficient evidence to establish, as a matter of law, that Defendants executed the documents at issue.  Accordingly, the factual background of this Order proceeds on the basis that Hunt Valley in fact executed the promissory note at issue and that the individual Defendants in fact executed personal guaranty agreements pertaining to that note.

[2] Plaintiff explains that "Rockbridge Commerical Bank was closed by the Georgia Department of Banking and Finance on December 18, 2009 and the [FDIC] was appointed Receiver.  FDIC then assigned the Loan at issue in this matter to RADC/CADC pursuant to a structured transaction sale agreement. [Hariri Aff., ¶ 4.] RADC/CADC was substituted as the proper Plaintiff in this action by order of this court dated September 13, 2011."  (Pl.'s Br. in Supp. of its Mot. for Summ. J. ("Pl.'s Br."), Dkt. [23-1] at 2 n.1.)  (See also Order, Dkt. [19] (substituting party Plaintiffs).)

[3] To secure repayment of the Note and any extensions or renewals thereof, Defendant Hunt Valley also executed a Security Deed in favor of Rockbridge on December 22, 2006.  (Hariri Aff., Ex. 1 (Assignment of Security Deed), Dkt. [23-4] at 1-13 of 16; id. Ex. 7 (Security Deed), Dkt. [23-7] at 7-10 of 31.)

("Hariri Aff."), Dkt. [23-3] ¶ 9; Hariri Aff., Ex. 2 (Note), Dkt. [23-4] at 13-16 of 16.)  Hunt Valley renewed the Note on July 5, 2007 and executed a Change In Terms Agreement on January 5, 2008 and again on January 5, 2009.[4]  (Hariri Aff., Dkt. [23-3] ¶¶ 7, 10-12; id. Ex. 3 (July 5, 2007 Promissory Note), Dkt. [23-5] at 1-4 of 8; id. Ex. 4 (Jan. 5, 2008 Change In Terms Agreement), Dkt. [23-5] at 5-8 of 8; id. Ex. 6 (Jan. 5, 2009 Change In Terms Agreement), Dkt. [23-6] at 1-4 of 10.)

Finally, on June 11, 2009, Hunt Valley entered into a modification agreement with Rockbridge (the "Modification Agreement"), which "extended the term of the loan and changed certain material terms, including reducing the principal amount of the indebtedness and extending the loan maturity date." (Id. ¶ 13; Hariri Aff., Ex. 6 (Modification Agreement), Dkt. [23-6] at 6-10 of 10.)  On the same date, and in consideration for the Modification Agreement, the Guarantors each executed a personal guaranty agreement (collectively the "Guaranty Agreements"), which obligated the Guarantors personally to guarantee payment of the following:

---

[4] At each of these times the December 22, 2006 Security Deed also was modified.  (Hariri Aff., Exs. 8-10, Dkt. [23-7] at 11-19.)

3

(a)     the indebtedness evidenced by that certain Promissory Note of even date herewith executed by the Borrower and payable to the order of the Bank in the ORIGINAL principal amount of **$500,000.00 (as modified and reduced to 441,150.00)**, representing a loan (the "Loan") from the Bank to the Borrower, plus the interest specified in such note, and any and all extensions, renewals, modifications, amendments, replacements and consolidations of the such note (which note and any and all extensions, renewals, modifications, amendments, replacements and consolidations thereof are collectively referred herein as the "Note")[5];

(b)     all expenses, including without limitation fifteen percent (15%) of the principal and interest as attorneys' fees, incurred in the collection of the Note, the enforcement of rights under any security therefor and the enforcement hereof . . . .

(Hariri Aff., Exs. 11-13, Dkt. [23-7] at 21-31 of 31 (Guaranty Agreements of Charles B. Merrill, III, Lee Oliver Gaskins, III, and Eric Fichtner) (emphasis in originals).)  In other words, the Guaranty Agreements obligated the Guarantors "personally to guarantee the payment and performance of the Loan and any

---

[5] Consistent with the terms of the June 11, 2009 Guaranty Agreements, the Court refers to the December 22, 2006 Note and all of its changes in terms/ modifications collectively as the "Note."  (See also June 11, 2009 Modification Agreement, Hariri Aff., Ex. 6, Dkt. [23-6] at 6 of 10 (reciting "Lender is the owner and holder of that certain Promissory Note executed by Borrower dated DECEMBER 22, 2006, in the original principal amount of $500,000.00; as modified as follows: July 5, 2007; January 5, 2008 and as last modified by that certain Change In Terms Agreement executed by Borrower, dated January 5, 2009 (collectively the "Note").)

AO 72A
(Rev.8/82)

extensions, renewals, or replacements thereof, plus accrued interest thereon and all attorney's fees, collection costs, and enforcement expenses thereto." (Pl.'s Statement of Material Facts ("SMF"), Dkt. [23-2] ¶ 4.)

Defendant Hunt Valley failed to make any payment of principal and/or interest at the time payment became due, or at any time thereafter, and thus is in default on its obligations under the Note. (Id.) Additionally, none of the Guarantors has made payment to Plaintiff, or any of its predecessors-in-interest, to satisfy Hunt Valley's obligations. (Id.) According to Plaintiff's records, the outstanding principal balance owed to Plaintiff is $436,809.10, and as of the date the Complaint was filed, the total interest owed was $82,386.83. (Id. ¶ 7; Hariri Aff., Dkt. [23-3] ¶ 22.)

In accordance with the foregoing, Plaintiff now moves for summary judgment against Defendants for the full amount of the principal owed under the Note ($436,809.10) and interest owed as of the date of entry of judgment. (Pl.'s Br., Dkt. [23-1] at 7.) Plaintiff also seeks summary judgment against Defendants for attorney's fees incurred in enforcing the Note. (Id.) Plaintiff contends that under the terms of the Note and the Guaranty Agreements, Defendants are obligated to compensate Plaintiff for attorney's fees in the

5

liquidated amount of fifteen percent (15%) of unpaid principal and accrued interest.  (Id. at 7.)

Defendants oppose Plaintiff's Motion for Summary Judgment on several grounds.  (See generally Defs.' Opp'n Br., Dkt. [24].)  First, Defendants argue that subject matter jurisdiction over the suit was lost when Plaintiff RADC/CADC was substituted for the FDIC as Plaintiff.  (Id. at 8-10.)  Second, Defendants argue that Plaintiff waived the individual Defendants' Guaranty Agreements by executing a new promissory note, on January 5, 2008, *after* the purported Guaranty Agreements were executed.  (Id. at 10-12.)  The remainder of Defendants' arguments concern the evidence Plaintiff has put forward in support of its motion for summary judgment.  Specifically, Defendants argue that Plaintiff has failed to prove its damages because it has failed to establish the applicable interest rate governing the Note.  (Id. at 12-14).  Defendants also argue that Plaintiff has failed to show entitlement to attorney's fees under the loan documents.  (Id. at 14-15.)  Finally, Defendants argue that Plaintiff has failed to prove by admissible evidence that Defendants executed the loan documents at issue (id. at 15-16) or the amount owing under the purported Note (id. at 16-17).  The Court considers these arguments below.

6

**Discussion**

## I.      Summary Judgment Legal Standard

Federal Rule of Civil Procedure 56 requires that summary judgment be

granted "if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). "The moving party bears 'the initial responsibility of informing the . . .

court of the basis for its motion, and identifying those portions of the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, which it believes demonstrate the absence of a genuine issue

of material fact.'" Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1259

(11th Cir. 2004) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)

(internal quotations omitted)). Where the moving party makes such a showing,

the burden shifts to the non-movant, who must go beyond the pleadings and

present affirmative evidence to show that a genuine issue of material fact does

exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

The applicable substantive law identifies which facts are material. Id. at

248. A fact is not material if a dispute over that fact will not affect the outcome

of the suit under the governing law. Id. An issue is genuine when the evidence

7

is such that a reasonable jury could return a verdict for the non-moving party.

Id. at 249-50.

Finally, in resolving a motion for summary judgment, the court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. Patton v. Triad Guar. Ins. Corp., 277 F.3d 1294, 1296 (11th Cir. 2002). But, the court is bound only to draw those inferences which are reasonable. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (internal citations omitted); see also Matsushita, 475 U.S. at 586 (once the moving party has met its burden under Rule 56(a), the nonmoving party "must do more than simply show there is some metaphysical doubt as to the material facts").

## II.    Analysis

The Court finds that Plaintiff is entitled to summary judgment for the full amount of unpaid principal under the Note, interest accrued as of the date of

entry of this Order, and attorneys fees in the liquidated amount of fifteen

percent (15%) of unpaid principal and accrued interest.  The Court reaches this

conclusion in spite of the many arguments advanced by Defendants.  The Court

first addresses Plaintiff's showing before turning to the contentions of

Defendants.

      A.      Plaintiff's Showing

      "A party seeking judgment on a promissory note has made a prima facie

case by producing the note and showing its execution."  Clower v. Orthalliance,

Inc., 337 F. Supp. 2d 1322, 1338 (N.D. Ga. 2004) (citing Gouldstone v. Life

Investors Ins. Co., 514 S.E.2d 54 (Ga. Ct. App. 1999)).  The same standard

applies to personal guaranty agreements.  See, e.g., Shropshire v. Alostar Bank

of Commerce, 724 S.E.2d 33, 38-39 (Ga. Ct. App. 2012) (affirming summary

judgment in favor of plaintiff under promissory note and guaranty agreements

where plaintiff made prima facie case by producing loan documents and

showing their execution).  "Once that prima facie case has been made, the

plaintiff is entitled to judgment as a matter of law unless the defendant can

establish a defense."  Clower, 337 F. Supp. 2d at 1338 (internal quotation marks

and citation omitted).

In this case, Plaintiff has produced sufficient evidence to establish that it is entitled to judgment as a matter of law under the Note and Guaranty Agreements.  Specifically, Plaintiff has produced the Note, the Modification Agreement, and the Guaranty Agreements executed by Defendants through the affidavit of its Portfolio Manager, Mr. Perry Hariri.  (Dkt. [23-3].)  It appears from the face of the Note and Modification Agreement that both documents were executed by Defendant Hunt Valley,  (Hariri Aff., Ex. 2 (Note), Dkt. [23-4] at 13-16 of 16; id., Ex. 6 (Modification Agreement), Dkt. [23-7] at 1-7 of 31), and it appears from the face of the three personal Guaranty Agreements that each was executed by one of the three individual Defendants (id., Exs. 11-13, Dkt. [23-7] at 20-31 of 31).  Mr. Hariri has averred that Defendant Hunt Valley has not made any payment of principal or interest as required under the Note and that none of the Guarantors has made any payment in satisfaction of Hunt Valley's obligations.  (Id., Dkt. [23-3] ¶ 21.)  Finally, Mr. Hariri has averred that under the terms of the Note, Defendants owe Plaintiff $436,809.10 in unpaid principal in addition to accrued interest.  (Id. ¶ 22.)

Based on the foregoing evidence, Plaintiff has made a prima facie case that it is entitled to judgment as a matter of law in the amount requested under

the terms of the loan documents at issue.  The burden accordingly shifts to

Defendant to show a genuine issue of material fact precluding entry of summary

judgment.  As set out in the Background section, supra, Defendants advance

several arguments in opposition to Plaintiff's Motion for Summary Judgment.

The Court considers each, in turn, and whether Defendants have carried their

burden of rebutting Plaintiff's prima facie case.

> B.     Defendants' Arguments in Opposition

> 1.     *The Court lacks subject matter jurisdiction.*

Defendants first argue that summary judgment is not proper because the

Court lacks subject matter jurisdiction over this case.  (Defs.' Opp'n Br., Dkt.

[24] at 8-10.)  Defendants point out that, as stated in footnote 2, supra, this

action originally was filed by the FDIC, which alleged subject matter

jurisdiction pursuant to 12 U.S.C. § 1819(b)(2).  This provision states that "all

suits of a civil nature at common law or in equity to which the [FDIC], in any

capacity, *is a party* shall be deemed to arise under the laws of the United States"

(with certain exceptions not relevant here).  12 U.S.C. § 1819(b)(2) (emphasis

added).  Defendants argue that because the FDIC is no longer a party to this

case–having transferred its assets to RADC/CADC, which subsequently was

substituted for the FDIC as Plaintiff–subject matter jurisdiction no longer exists.

(Defs.' Opp'n Br., Dkt. [24] at 9.)

The Eleventh Circuit has not spoken on the issue of whether District

Courts retain subject matter jurisdiction over cases brought by the FDIC under

12 U.S.C. § 1819(b)(2) once the FDIC is no longer a party, and the Circuit

Courts that have addressed the issue (the Second, Third, and Fifth) have reached

divergent results.  In the majority are the Fifth and Second Circuits, "which

hold that § 1819(b)(2) continues to provide federal jurisdiction after the FDIC

has been dismissed from a case or transferred its assets to a third party." <u>Adair</u>

<u>v. Lease Partners, Inc.</u>, 587 F.3d 238, 242 (5th Cir. 2009) (citing <u>FSLIC v.</u>

<u>Griffin</u>, 935 F.2d 691, 697 (5th Cir. 1991) and <u>FDIC v. Four Star Holding Co.</u>,

178 F.3d 97, 100-01 (2d Cir. 1999)).  In <u>Adair</u>, the Court ruled as follows:

"Despite the FDIC's dismissal, all claims in the instant case continue to 'arise

under the laws of the United States,' pursuant to § 1819(b)(2).  Therefore,

original jurisdiction remains, and the exercise of that jurisdiction was

mandatory for the district court." 587 F.3d at 245 (citation omitted).  In an

earlier case, the Fifth Circuit justified this rule on several grounds, including the

following:

12

> The policy reasons for insuring federal jurisdiction over cases
> involving failed thrifts continue when the FDIC is voluntarily
> dismissed as a party and the owner of the failed thrift's assets
> remains.  A transferee from . . . FDIC, as successor of their
> interests, is still entitled to the protection of federal courts . . . .

Griffin, 935 F.2d 691.  The Second Circuit follows the same approach, holding

that "the transfer of assets by the FDIC to a private third party does not divest

the court of subject matter jurisdiction under Section 1819 . . . ."  Four Star

Holding Co., 178 F.3d at 101.  The Second Circuit explained the rationale

behind this rule as follows:

> "Adopting a rule which would make federal jurisdiction contingent
> on who owned an interest in certain property at a particular time
> could well have the effect of deterring normal business
> transactions during the pendency of what might be lengthy
> litigation . . . and could also deter transactions by FDIC that
> presumably are in the public interest."

Id. at 101-02.

The Third Circuit, on the other hand, has reached the opposite

conclusion.  In New Rock Asset Partners v. Preferred Entity Advancements,

Inc., the court confronted a case originally brought by the Resolution Trust

Corporation (RTC) under a jurisdictional statute analogous to the FDIC statute,

which extended federal jurisdiction to "any civil action, suit, or proceeding to

13

which the [RTC] is a party."  101 F.3d 1492, 1494 (3d Cir. 1996)  (citing 12

U.S.C. § 1441(a)(*l*)(1)).  Subsequent to filing suit, the RTC transferred its

interest in the underlying loans to a third party, which then substituted itself for

the RTC as plaintiff.  Id. at 1494, 1495-96.  The issue presented to the Third

Circuit, like the issue presented in Adair, Griffin, and Four Star Holding, was

"whether § 1441(a)(*l*)(1) provides for continuing jurisdiction where the RTC

was once a party but has since been dropped from the case."  Id. at 1498.  Based

primarily on the plain language of the statute, which provided for federal

jurisdiction only in cases where the RTC "is" a party, the Court answered that

question in the negative: "[W]e conclude that the plain meaning of the statute

precludes continuing jurisdiction over an action where the RTC is no longer a

party."  Id. at 1501.

        While Defendants' jurisdictional argument is not without force, and

indeed finds support in Third Circuit precedent, the Court finds the better rule

to be that followed by the Fifth and Second Circuits: that subject matter

jurisdiction over suits brought by the FDIC under § 1819 continues after the

FDIC transfers its assets to a third party and is dismissed from the suit.  Despite

the language of § 1819, the Court finds this to be the better rule in light of the

14

policy considerations noted by the Second Circuit in <u>Four Star Holdings</u> <u>Company</u>, namely, that a contrary rule would deter normal business transactions subsequent to the filing of suit, many of which presumably would be in the public interest.  Accordingly, the Court holds that subject matter jurisdiction under § 1819 was not lost in this case when the FDIC transferred the subject loans to RADC/CADC, which then was substituted for the FDIC as plaintiff.

2.     *Plaintiff waived Defendants' purported guaranty obligations.*

Defendants next argue that Plaintiff waived the purported Guaranty Agreements of the individual Defendants by executing a "new loan" on January 5, 2008, after the Guaranty Agreements purportedly were executed.  (Defs.' Opp'n Br., Dkt. [24] at 11-12; <u>see, e.g.</u>, <u>id.</u> at 12 ("The execution of a new loan . . . waived the purported prior guaranties and the purported guarantors are released from liability.").)  This argument plainly fails and warrants little discussion: as the Guaranty Agreements were executed on June 11, 2009 (Hariri Aff., Exs. 11, 12, and 13, Dkt. [23-7] at 21-31 of 31), *after* January 5, 2008, they could not have been waived by any instrument executed at that time.     *3.*
        *Plaintiff has not proven by admissible evidence (i) that Defendants signed the loan documents at issue, (ii) the relevant interest rate under the Note, (iii) that Plaintiff is entitled to attorney's fees, or (iv) the amount owing under the Note.*

15

Defendants' final arguments each pertain to the strength or admissibility of the evidence presented by Plaintiff in support of its motion for summary judgment. First, Defendants contend that Plaintiff has failed to show by admissible evidence that Defendants signed the loan documents at issue. (See generally Defs.' Opp'n Br., Dkt. [24].) Specifically, Defendants argue that while the loan documents may fall within the business records exception to the hearsay rule, the loan documents are nonetheless inadmissible because Plaintiff has failed to authenticate them. (Id. at 15-16.) In this regard, Defendant argues:

> The only evidence presented by Plaintiff [to show that Defendants signed the loan documents] is an Affidavit of Mr. Hariri which states that he reviewed the documents in a file and saw that they contain signatures in the names of the defendants. Mr. Hariri does not testify that the Defendants signed those documents to his personal knowledge, such as by showing that he attended any closing, received an acknowledgment of signatures, etc. Having a document in a file does not authenticate it.

(Id. at 16.) This argument is misplaced. In United States v. Flom, the court explained that business records may be admitted into evidence under Federal Rule of Evidence 803(6) even without testimony from the person or persons who maintained or prepared the records. 558 F.2d 1179, 1182 (5th Cir. 1977).[6]

_____

[6] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit Court of Appeals adopted as binding precedent all decisions of the

16

The facts of <u>Flom</u> were as follows:

> Appellants claim error in the admission, Fed. R. Evid. 803(6), of invoices received and held by defendant Flom's Company (Florida Steel Corporation) in its regular course of business, but which were prepared and sent by another company.  Foundation testimony was offered through an official of Florida Steel Corporation that the invoices were received and held in the regular course of business. No testimony of the preparing company was offered.

<u>Id.</u>  The Court held that "[a]lthough the usual case involves an employee of the preparing business laying the necessary foundation under 803(6), the law is clear that under circumstances which demonstrate trustworthiness *it is not necessary that the one who kept the record, or even had supervision over their preparation, testify*."  <u>Id.</u> (emphasis added).

In this case, the Court finds that Mr. Hariri, Plaintiff's Portfolio Manager, has laid a proper foundation for the admission of the loan documents as business records under Federal Rule of Evidence 803(6).  Specifically, he has averred the following:

> In my role as Portfolio Manager with [Plaintiff], I am familiar with the structured transaction sale documents (the "Sale Agreements") entered into on January 27, 2011 by and between the Federal Deposit Insurance Company ("FDIC") and [Plaintiff].
> These agreements transfer certain assets, including a large

---

former Fifth Circuit handed down before October 1, 1981.

number of sub/nonperforming loans, from FDIC to [Plaintiff].  In fulfillment of its responsibility to maximize the recovery of assets of failed institutions, FDIC entered into the Sale Agreements with [Plaintiff], which requires [sic] [Plaintiff] to manage and service the assets and seek to recover the value of those assets.

In my capacity as Portfolio Manager, I am personally familiar with [Plaintiff]'s procedures for maintaining business records related to the assets it acquired pursuant to the Sale Agreements.  As receiver for Rockbridge Commercial Bank ("Rockbridge"), FDIC took possession of the original files maintained by Rockbridge and subsequently transferred the the [sic] original bank files and other records associated with the loans transferred [sic] to [Plaintiff].

[Plaintiff] has a vested interest in the accuracy of the file materials it receives from FDIC, in that it must rely on those records in order to manage, service, and recover the value of the assets that were transferred to [Plaintiff].

One of the sub/nonperforming loans transferred to [Plaintiff] is a loan that was originally issued by Rockbridge to Hunt Valley Properties, LLC ("Hunt Valley") on December 22, 2006 and renewed/modified at various times thereafter (collectively "the Loan"). . . .

[Plaintiff] received original documents regarding the Loan from FDIC in furtherance of the Sale Agreements.  These records are presently maintained by Wells Fargo, N.A., as custodian for [Plaintiff] in the regular course of its business.

(Hariri Aff., Dkt. [23-3] ¶¶ 4-8.)  Finally, Mr. Hariri has attested that he has

personally reviewed the Note, the Modification Agreement, and the Guaranty

18

Agreements attached to his Affidavit and that the documents are true, correct, and have not been altered or modified in any material respect.  (Id. ¶¶ 9, 13, 18-20.)  This is plainly a sufficient foundation to admit the loan documents into evidence as business records.

Defendants also argue that Plaintiff has failed to establish through admissible evidence the amount owing under the Note.  (See, e.g., Defs.' Opp'n Br., Dkt. [24] at 16 ("Plaintiff has not submitted any admissible evidence of the amount owing.  Mr. Hariri's Affidavit states that he basis [sic] his loan balance calculations on business records of Plaintiff.  That testimony is hearsay, as it summarizes documents not in evidence.").)  This argument fails for the reasons articulated above.  The Affidavit of Mr. Hariri is admissible evidence of the amount owing under the Note as Mr. Hariri relies on admissible business records of Plaintiff in determining the amount owed under the Note.  Mr. Hariri attests that he has reviewed the payment history and payoff information associated with the Loan; that Defendant Hunt Valley has failed to make any payment under the Note; that none of the Guarantors has made any payment as required under the Guaranty Agreements; and, finally, that based on the records of Plaintiff's servicer, "as of September 9, 2011, the principal balance owed to

19

[Plaintiff] pursuant to the Note and Modification Agreement [was] $436,809.10." (Id. ¶¶ 21-22.) Defendants have failed to come forward with any affirmative *evidence* that a contrary amount–or no amount at all–is owed to Plaintiff under the Note. Accordingly, Defendant's attack on the Affidavit of Mr. Hariri fails to rebut Plaintiff's showing that it is entitled to judgment as a matter of law in the specific amount requested.

Finally, Defendants argue that Plaintiff is not entitled to summary judgment in the amount it seeks because it has failed to establish the applicable interest rate or that it is entitled to attorney's fees. With respect to the interest rate, Plaintiff has presented evidence of the amount of interest owing through the Affidavit of Mr. Hariri. (Dkt. [23-3] ¶ 22.) Mr. Hariri averred that based on the records of Plaintiff's servicer, as of September 9, 2011, Plaintiff was entitled to $57,161.32 in regular interest and $14,851.51 in default interest. (Id.) He further averred that for every day after this date, interest would accrue at a per diem rate of $109.20. (Id.) To withstand Plaintiff's Motion for Summary Judgment, Defendants must do more than argue that Plaintiff has failed to prove that these numbers properly were calculated; on the contrary, Defendants must come forward with *evidence* sufficient to show that a genuine

20

issue of fact exists regarding the amount of interest owing to Plaintiff.  Because

Defendants have not produced any evidence that Plaintiff is entitled to a

contrary amount of interest, Plaintiff is entitled to judgment in the amount of

interest it seeks.

Defendants' argument with respect to attorney's fees likewise fails.

Defendants argue that "[t]he Security Deed recorded on January 26, 2007 . . .

contains three (3) different percentage rates with which to calculate the

attorneys' fees due upon collection," demonstrating "that there could not have

been a meeting of the minds with regard to the attorneys' fees provision."

(Defs.' Opp'n Br., Dkt. [24] at 15.)  Plaintiff, however, is seeking to recover

under the terms of the Note and Guaranty Agreements.  (See, e.g., Pl.'s Reply

Br. in Supp. Mot. for Summ. J. ("Pl.'s Reply"), Dkt. [25] at 12 ("Defendants are

correct that a January 2007 Security Deed contains more than one percentage

rate to be used to calculate the amount of attorney's fees due on collection.

However, this is a suit for judgment against Defendants pursuant to a 2009 Note

and guaranties, not an action to foreclose upon the land pursuant to the 2007

Security Deed.  Therefore, the terms of the note and guaranties apply.").)

Under the plain terms of the Note, Defendant Hunt Valley is obligated to

21

compensate Plaintiff for attorney's fees incurred in collecting the Note in the amount of fifteen percent (15%) of principal plus accrued interest.  (Dkt. [23-6] at 3 of 10.)  The Guarantors are likewise obligated to pay Plaintiff this amount, having guaranteed payment to Plaintiff of "all expenses, including without limitation fifteen percent (15%) of the principal and interest as attorneys' fees, incurred in the collection of the Note . . . ."  (Hariri Aff., Exs. 11-13, Dkt. [23-27], at 21, 25, and 29.)  Defendants' argument therefore fails, and Plaintiff is entitled to summary judgment for attorney's fees in the amount requested.

In sum, Defendants have failed to come forward with any evidence to rebut Plaintiff's showing that it is entitled to judgment as a matter of law under the Note and Guaranty Agreements.  Accordingly, Plaintiff's Motion for Summary Judgment is due to be GRANTED.

### Conclusion

In accordance with the foregoing, Plaintiff's Motion for Summary Judgment [23] is hereby **GRANTED**.  The Clerk shall enter Judgment in favor of Plaintiff and against Defendants in the sum of $542,892.33 for principal and interest plus $81,433.84 for attorney's fees.

22

**SO ORDERED**, this  17th  day of July, 2012.


RICHARD W. STORY
UNITED STATES DISTRICT JUDGE